UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    RUSSELL HAMBY, and,
    LUCY ANN HAMBY,

        Debtor(s).
_____/

Case No.: 15-45722
Chapter 13
Hon. Walter Shapero

    RUSSELL HAMBY, and.
    LUCY ANN HAMBY,

        Plaintiff(s),

v.

    OCWEN LOAN, ATLANTIC CREDIT
    & FINANCE, LLC, NORTH STAR15-
    CAPITAL ACQUISITION, LLC,
    CACH, LLC,

        Defendant(s).
_____/

Adv. Pro. Case No.: 15-04480

## OPINION REGARDING VALUE OF REAL PROPERTY

**I.    INTRODUCTION**

Debtors, Russell and Lucy Ann Hamby, have two mortgages on their primary residence, located at 8064 Reflection Court, Ypsilanti, MI 48197 ("the Property"). The first mortgage is held by Chase Mortgage and had a balance of $241,754.97 as of the petition date, April 10, 2015. The second mortgage is held by Ocwen Loan and had a balance of $29,303.22 as of the petition date.

Debtors filed this adversary proceeding seeking to strip Ocwen's lien. Debtors assert that the value of the Property as of the petition date was $238,000.00. Ocwen contends that the value of the Property as of the petition date was $247,000.00. A trial was conducted.

## II. EVIDENCE and TESTIMONY

### A. Debtors' Evidence:

Debtors' first witness was Joan Rose. She has been licensed as a real estate agent in Michigan since 1992. The Court certified Rose as an expert in market valuation of residential real property. Rose prepared a market analysis of the Property (Pls.' Ex. 2) and stated that in her opinion similar homes in the area would sell for $200,000.00-$210,000.00. She based this estimate on both a physical inspection of the Property and a comparison of home sales in the area. Rose stated that she made adjustments to the value of the Property based on its poor condition. She testified that the home has water damage due to a hole in the roof. She also stated that the home needs new windows, light fixtures, and carpeting. She stated that although the home is only 14 years old, it has all "builders grade" products that did not hold up very well. She testified that the front porch step is sinking, the interior needs to be repainted, there are holes in the carpet, the brick patio needs repair, there is missing siding and gutters, and the home does not have proper drainage. Rose stated that due to the water damage there was a possibility of mold. In her opinion, for a home of this age, the Property was in the worst condition she has seen. Rose inspected the Property on November 11, 2015. She stated that the value of the Property as of the April 2015 petition date would be slightly less than her estimate because sales prices have risen approximately 4-5% over the past year.

Lucy Ann Hamby, the Debtor-wife, testified that Debtors have lived on the Property since 2002 and purchased the home as a new build. She stated that they have made no updates to the Property and she considers the condition "not good." She confirmed that there is a hole in the roof resulting in water leaking throughout all three floors of the Property. She is concerned about the possibility of mold. She stated that the wood floors are in poor condition, the carpeting is stained

and has holes, there are missing portions of gutters and siding, the front concrete step leans forward, and a portion of the driveway is sunken in. She also testified that the seals on approximately ½ of the 30 windows in the home are broken, resulting in condensation between the glass. Mrs. Hamby reviewed photos of the home (Pls.' Ex. 8), which support her description of the maintenance issues of the Property.

Debtors' third witness, Robert Magee, has been a licensed real estate appraiser since 2009. He mainly conducts residential appraisals in the metro Detroit area. He estimates that he has done close to 1,000 appraisals. The Court certified him as an expert. Magee prepared an appraisal of the Property and valued it at $238,000.00. He stated that he used the comparable sales method whereby he inspected the Property and then looked for comparable home sales in the neighborhood.

Magee rated the property as C4 which provides:

> C4: The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

(Magee's Appraisal, Pls.' Ex. 3 at 10)

In describing the condition of the Property, Magee indicated:

> Kitchen-not updated; Bathrooms-updated-timeframe unknown; The improvements feature some deferred maintenance and physical deterioration due to normal wear and tear. The dwelling require[s] some minor and major repairs. The major appears to be the water damage that is present throughout the house. It appears the cause of this problem is the roof and this [is] based on the patch work present on the roof. Other repair issues are the water damaged walls and ceiling in multiple areas of the house. Cracked driveway, damaged and missing gutters, damaged faceboards and a sinking front porch. Cost to cure these repairs is $15,000.00.

(Magee's Appraisal at 3)

Magee's appraisal contained 4 comparable properties. All of his comparables were within .25 miles of the Property.

Magee's first comparable is located at 8044 Pebblestone Dr. It sold for $229,000.00 in October 2014. Magee made a $5,000.00 downward adjustment for financing concessions, which are generally amounts paid by the seller to the buyer at closing. He made an $8,300.00 upward adjustment because the home was smaller than the Property (2,500 square feet as opposed to 2,915 square feet), and a $5,000.00 upward adjustment because the home did not have a finished basement. The adjusted sale price was $237,300.00.

Magee's second comparable is located at 8340 Thornhill Dr. It sold for $237,000.00 in October 2014. Magee made a $6,000.00 downward adjustment for financing concessions and a $9,900.00 upward adjustment for gross living area (2,422 square feet). Magee rated the condition of this home as C3, which according to the Fannie Mae appraisal guidelines is defined as:

> C3: The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

(Magee's Appraisal at 10)

Magee therefore made a $15,000.00 downward adjustment for condition. He testified that it would cost approximately $15,000.00 to bring the condition of the Property up to the same level as this home. The resulting adjusted sale price was $225,900.00.

Magee's third comparable, located at 8216 Blue Jay Dr., sold for $249,000.00 in October 2014. Magee also rated this home as C3 and therefore made a $15,000.00 downward adjustment for the condition of the home, resulting in an adjusted sale price of $234,000.00.

Magee's fourth comparable, located at 7897 Creek Bend Dr., sold for $248,000.00 in October 2014. Magee made a $9,600.00 upward adjustment for gross living area (2,434 square feet) and a $15,000.00 downward adjustment for condition (C3). The resulting adjusted sale price was $242,600.00.

Magee testified that he obtained information regarding the comparable properties from public records. He acknowledged that the public records do not contain information regarding the condition of the property, however, he stated that he assumed the properties he rated C3 were in better condition than Debtors' Property based on their sale price. Magee stated that although his appraisal was as of November 13, 2015, his opinion of the value of the property would be the same as of the April 2015 petition date because he used comparable sales that were effective as of April 2015.

B.  **Ocwen's Evidence:**

Ocwen provided the testimony of Brian Duchene, also a licensed appraiser in Michigan. Duchene obtained his license in 2005 and does approximately 10-15 appraisals per week. The Court qualified him as an expert. Duchene testified that on August 5, 2015, he inspected the inside and outside of the Property and made notes of any deferred maintenance. His description of the Property is as follows:

> No updates in the prior 15 years; The subject was observed in fair condition. The utilities were on and functioning. The front step is sinking and may be a tripping hazard. There is missing siding at the rear of the subject. Rotting fascia boards on the front of the subject and the gutter has fallen off at that location. There is evidence of possible roof leaks in the foyer and family room area near the fireplace. There is a temporary patch on the roof above the foyer area. Appraiser strongly suggests a roof and mold mitigation inspection to determine the livability of the subject.

(Duchene's Appraisal, Def.'s Ex. 1 at 1)

-5-

15-04480-wsd    Doc 48    Filed 05/12/16    Entered 05/12/16 14:34:59    Page 5 of 11

Duchene rated the condition of the Property as C4, but stated that he could not comment on the deferred maintenance cost because he is not a licensed contractor. He testified that the Property has been adequately maintained. Duchene used 5 comparables, three of which were the same as those used by Magee. Duchene's comparables were also all within .25 miles of the subject Property. Duchene valued the Property at $247,000.00.

Duchene's first comparable is located at 8313 Thornhill Dr. It sold for $266,000.00 in May 2015. Duchene made a $6,600.00 downward adjustment for financing concessions and upward adjustments of $8,600.00 because it was only 2,300 square feet, $5,300.00 because the basement was smaller and unfinished, and $2,000.00 because it only had a 2 car garage. The resulting adjusted sale price is $275,100.00.

Duchene's second comparable is located at 8216 Blue Jay Dr. It sold in October 2014 for $249,000.00. Duchene made a $850.00 downward adjustment for financing concessions. He made a $4,000.00 upward adjustment because the home did not have a finished basement and a $2,000.00 upward adjustment because the home only had a 2 car garage. The resulting adjusted sale price is $254,150.00.

Duchene's third comparable is located at 8340 Thornhill Dr. It sold for $237,000.00 in November 2014. Duchene made a $7,200.00 upward adjustment because the home was only 2,422 square feet, an $1,800.00 upward adjustment because the basement was smaller, a $500.00 upward adjustment because it did not have a deck or a patio and a $500.00 upward adjustment for one fireplace. The resulting adjusted sale price is $247,000.00.

Duchene's forth comparable is located at 8044 Pebblestone Dr. It sold in October 2014 for $229,000.00. Duchene made a $5,000.00 downward adjustment for financing concessions. He made

-6-

upward adjustments of $6,100.00 because the home was only 2,500 square feet and $5,300.00 because the basement was smaller and unfinished. He also made a $500.00 downward adjustment for the fireplace. The resulting adjusted sale price is $234,900.00.

Finally, Duchene's fifth comparable is located at 8256 Blue Jay Dr. It sold for $210,000.00 in June 2014. Duchene made a $6,300.00 downward adjustment for financing concessions. He made an $8,600.00 upward adjustment because the home was only 2,330 square feet, a $3,500.00 upward adjustment because the basement was smaller and did not have a bathroom, a $2,000.00 upward adjustment because the home only had a 2 car garage and a $500.00 upward adjustment because the home did not have a deck or patio. The resulting adjusted sales price is $218,300.00.

## III. ANALYSIS

In a Chapter 13 case, § 1322(b) prevents modification of the rights of the holder of a claim "secured only by a security interest in real property that is the debtor's primary residence." 11 U.S.C. § 1322(b)(2). An exception to the anti-modification provision of § 1322(b) applies if there is more than one mortgage on the property and the property is worth less than the amount owing on the first mortgage. In such case, the second mortgage can be "stripped" from the property. *See Lane v. Western Interstate Bancorp* (*In re Lane*), 280 F.3d 663, 664 (6th Cir. 2002) ("Where a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, . . . the holder of the second mortgage has only an 'unsecured claim[.]'").

As noted, the amount owing on the first mortgage is $241,754.97. Debtors have the burden of proving, by a preponderance of the evidence, that the Property was worth less than that amount on the date the petition was filed. *McKinney v. JP Morgan Chase Bank* (*In re McKinney*), 501 B.R.

338, 339-40 (Bankr. E.D. Mich. 2013); *Briseno v. Mut. Fed. Sav. & Loan Assoc.* (*In re Briseno*), 496 B.R. 509, 515 (Bankr. N.D. Ill. 2013).

Both appraisers used the sales comparison approach. "Under the sales comparison approach the appraiser conducts a search of a similar real estate market to the subject property in order to find properties in similar situations to determine the value of the property in question." *In re Whitney Lane Holdings, LLC*, No. 08-72076-478, 2009 WL 2045700, at *8 (Bankr. E.D.N.Y. July 6, 2009). "However, as each real property is unique the appraiser will make adjustments to account for the differences between the subject property and the comparable properties in order to determine the appropriate value of the subject property." *Id*. "Valuation is inherently subjective and depends on the judgment of the appraiser as to what constitutes a 'comparable' property." *Hall v. Brendan Fin*. (*In re Hall*), 495 B.R. 393, 396 (Bankr. N.D. Ill. 2013). It is important to note that "[t]he valuation of property is an inexact science." *In re American HomePatient, Inc*. 298 B.R. 152, 173 (Bankr. M.D. Tenn. 2003). Moreover,

> Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses. *See In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) ("The valuation process is not an exact science, and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of . . . [the appraisal] evidence."). As noted by the Bankruptcy Court for the Southern District of Ohio in *In re Smith,* 267 B.R. 568, 572-573 (Bankr. S.D. Ohio 2001), when "weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including: . . . the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented." *Id.* (internal citations omitted). A bankruptcy court is not bound to accept the values contained in the parties' appraisals; rather, it may form its own opinion considering

-8-

15-04480-wsd    Doc 48    Filed 05/12/16    Entered 05/12/16 14:34:59    Page 8 of 11

> the appraisals and expert testimony. *Id*. at 573; *see, e.g., In re Abruzzo,* 249 B.R. 78, 86 (Bankr. E.D. Pa. 2000) ("I am left to some extent with the proverbial battle of the appraisers. Finding merit to both their positions, the only conclusion I can reach is to find some value in between.").

*Id*. at 173-74.

Here, the Court is faced with two competing appraisals - one valuing the property at $238,000.00, and one valuing the property at $247,000.00. Additionally, the Court was presented with a market analysis prepared by Joan Rose valuing the property much lower - in the $200,000.00-$210,000.00 range, as well as the testimony of Mrs. Hamby. All witnesses acknowledged that the home has numerous maintenance issues and has not been updated. Rose's market analysis seems low in comparison to the appraisals. However, it is entitled to some weight. The estimates provided by the Debtors for replacing the roof, windows and patio were inadmissible, making it difficult for the Court to determine the cost. However, in the Court's experience, the cost for such repairs would be substantial - at a minimum, several thousand dollars.

Turning to the appraisals, as noted, both appraisers used three of the same comparables: 8044 Pebblestone, 8340 Thornhill, and 8216 Blue Jay. The Court therefore finds that it is appropriate to focus on these comparables when determining the value of the Property. Both appraisers made similar adjustments to the Pebblestone property and ended up with adjusted sale prices that were very close ($237,300.00 for Magee and $234,900.00 for Duchene). However, their evaluations of the Thornhill and Blue Jay properties were markedly different. Magee opined that these homes were in better condition than the property and rated them as C3, which resulted in a $15,000.00 downward adjustment to each home. Duchene felt that these homes were in the same condition as the Property

and therefore rated the condition of these homes as C4. He based his opinion on his review of the pictures and descriptions from the MLS listings.

The MLS description for 8216 Blue Jay is as follows:

> Stunning beautiful Colonial. Large master suite with jetted tub & fireplace, double sinks, stand alone shower & walk-in closet. Large Gourmet kitchen with newer appliances. Formal Dining area leads to large Great Rm with double sided fireplace that is also in study area. Hardwood floors, carpet and ceramic tile. First floor laundry. Large basement with egress window. Home has sprinkler system & is beautifully landscaped with a small deck. Home has been freshly painted in many areas inside and out. Large 2.5 car garage.

(See Def's Ex. 4 at 7)

The MLS description for 8340 Thornhill states:

> This is an INCREDIBLY WELL MAINTAINED home from top to bottom!! As you enter you are greeted with a spacious entry with shining hardwood floors. The foyer leads you to a spacious living room and then onto a formal dining room with expansive crown molding. The kitchen has lots of rooms for a table and seating at the island. All kitchen appliances stay. You go one step down to large family room with a gas fireplace and views of the backyard. The basement is fully finished with an egress window, ½ bath and a gigantic rec room. The master suite has vaulted ceilings. It also features a Jacuzzi tub, double vanity, separate shower and toilet room. The other three bedrooms on the second floor area good size along with another full bath that contains a double vanity and laundry room.

(See Def's Ex. 4 at 4)

The MLS descriptions for these homes support a finding that they are in substantially better condition than the Property and would fall into the C3 category (The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The

structure has been well maintained.) Accordingly, the Court finds Magee's condition adjustments for these homes justified.

Magee did make a $6,000.00 downward adjustment to the 8340 Thornhill home for financing concessions when there was no evidence of that in the public records. However, even after adding that amount back in, the adjusted sales price of $231,900.00 remains below the appraised value of the property.

To be sure, this is a very close case and as opposed to other such cases, the valuation differences are relatively small and the result largely hinges primarily on the Court's perception of the condition and state of repair of the property and its effect on its value. Considering the totality of the evidence, the Court finds that Debtors have satisfied their burden of showing that the value of the home, as of the petition date, was less than the $241,754.97 amount owing on the first mortgage. Ocwen therefore has an unsecured claim which can be stripped under § 1322(b)(2).

Debtors shall present an appropriate order.

**Signed on May 12, 2016**

                                                     **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**